UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ UNITED STATES OF AMERICA,            │
│                                       │
│                    Plaintiff,         │
│                                       │
│  -against-                            │
│                                       │
│ NAASÓN JOAQUÍN GARCÍA,                │
│ EVA GARCÍA DE JOAQUÍN,                │
│ JORAM NÚÑEZ JOAQUÍN, et al.,          │
│                                       │
│                                       │
│                    Defendants.        │
└─────────────────────────────────────┘
```

25-CR-370 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are motions filed by Defendants Naasón Joaquín García and Joram Núñez Joaquín for disclosure of grand jury transcripts and exhibits.  Defendant Eva García de Joaquín joins both motions.[1]  For the foregoing reasons, Defendants' motions are DENIED.

## BACKGROUND

The charges against Defendants arise from an alleged criminal conspiracy to commit sex trafficking, abuse women and children, produce and distribute child pornography, launder criminal proceeds, and obstruct justice.  (Dkt. no. 4 at 1-2.)  As alleged in the operative Indictment, Defendants facilitated and furthered

---

[1] See Defendant García's Motion for Disclosure of Grand Jury Transcripts and Exhibits (dkt. no. 51 ("García Mot.")); Defendant Joaquín's Motion to Produce Grand Jury Minutes (dkt. no. 52 ("Joaquín Mot.")); Defendant de Joaquín's Letter Motion To Join Codefendants' Motions (dkt. no. 53); Government's Memorandum In Opposition to Defendant's Motion to Disclose (dkt. no. 54 ("Gov. Opp.")); Defendant García's Reply Memorandum of Law in Support (dkt. no. 55).

the operation of a criminal enterprise that sexually abused and victimized members of the La Luz del Mundo Church (the "LLDM Church") and smuggled cash to fund the sex trafficking operation. As alleged, among other acts, García himself sexually abused minor victims and orchestrated the creation of child pornography, García de Joaquín assisted by identifying and preparing young victims, and Joaquín took steps to prevent victims from reporting abuse. (Id. ¶¶ 20, 21, 24.)  The Indictment also alleges that Defendants silenced those who tried to speak up about the crimes and used threats (and in some cases, physical force) to make victims comply with the sexual demands.  (Id. ¶ 24(c).)  Through the LLDM Church's culture of obedience, countless victims were allegedly manipulated by the Defendants for sexual purposes.  (Id.)

For these alleged acts, the operative six-count Indictment charges Defendants with (i) racketeering conspiracy; (ii) sex trafficking conspiracy; (iii) sex trafficking by force, fraud, and coercion; (iv) inducement to travel to engage in unlawful sexual activity; (v) conspiracy to sexually exploit children; and (vi) child exploitation enterprise.

## LEGAL STANDARD

Defendants argue that they have a "colorable basis for a motion to dismiss and/or strike" the Indictment in their forthcoming motions and thus move for disclosure of the grand jury

2

proceedings to support their anticipated motions. (See, e.g. García Mot. at 1.)

Now codified through Federal Rule of Criminal Procedure 6(e), grand jury secrecy is a deeply rooted tradition that is "older than our Nation itself." In re Petition of Craig, 131 F.3d 99, 101 (2d Cir. 1997) (citation omitted); see also In re Grand Jury Subpoenas, 454 F.3d 511, 521 (6th Cir. 2006) (discussing how the ancient rule of grand jury secrecy can be traced to the 1681 prosecution of the Earl of Shaftesbury, in which grand jurors refused the Crown's demands to hear evidence in public). For many reasons, "[t]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." United States v. Haller, 837 F.2d 84, 87-88 (2d Cir. 1988) (quoting Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979)). Indeed, the same rationales articulated by the English grand jurors in 1681 remain the basis for grand jury secrecy today: secrecy ensures candor from witnesses, encourages those hesitant to come forward, deters improper influence or tampering, and protects the reputations of innocents from public exposure should the grand jury exonerate them. See Douglas Oil, 441 U.S. at 218-19; United States v. Sells Eng'g, Inc., 463 U.S. 418, 424-25 (1983) (observing that "grand jury secrecy . . . is as important for the protection of the innocent as for the pursuit of the guilty"). Thus, grand jury proceedings receive a "presumption of secrecy and closure,"

3

In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996) (citation omitted), that "both Congress and this Court have consistently stood ready to defend . . . against unwarranted intrusion," Sells, 463 U.S. at 425.

Grand jury secrecy, however, is not absolute.  Under Rule 6(e) "the Court may authorize disclosure . . . of grand jury proceedings at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  See Fed. R. Crim. P. 6(e)(3)(E)(ii).  "[T]he burden is on the party seeking disclosure to show a particularized need that outweighs the need for secrecy." United States v. Rivera Rodriguez, 2019 WL 1949846, at *1 (S.D.N.Y. Apr. 19, 2019).  A particularized need is shown by demonstrating "that the material [the defendants] seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil, 441 U.S. at 222 (footnote omitted).

For good reason, "[t]he standard for granting a motion to inspect proceedings before a grand jury is very high."  United States v. Hunt, 2006 WL 2613754, at *10 (S.D.N.Y. Sept. 6, 2006). Grand jury materials "should not be [disclosed] without concrete allegations of Government misconduct," United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994), meaning that "decisions to unseal

grand jury records are rare," <u>Frederick v. New York City</u>, 2012 WL 4947806, at *8 (S.D.N.Y. Oct. 11, 2012). It is settled that "[t]he strong presumption of regularity in grand jury proceedings cannot be outweighed by purely conclusory or speculative allegations of misconduct." <u>United States v. Ferrara</u>, 990 F. Supp. 146, 152 (E.D.N.Y. 1998) (citation omitted). As such, "speculation and surmise as to what occurred before the grand jury is not a substitute for fact." <u>United States v. Wilson</u>, 565 F. Supp. 1416, 1436 (S.D.N.Y. 1983).

## DISCUSSION

In their motions, Defendants ask to unseal all transcripts and exhibits presented to the grand jury. As noted above, grand jury proceedings shall not be unsealed absent specific allegations of impropriety before the grand jury. Both motions fall well short of that standard here.

### A. García's Motion

i)   <u>First Amendment Arguments</u>

García fails to allege any actual and specific Government misconduct that would warrant disclosure. (<u>See generally</u> García Mot.) The main thrust of García's argument is that the Indictment is based on unconstitutional "spiritual coercion" and "corruption of true church" doctrines that rest upon the LLDM Church's teachings for the charges and as such the grand jury transcripts are necessary for a future motion to dismiss on these grounds.

5

(See id. at 3-4.)  For example, García argues that it is likely the Government presented the grand jury with a theory requiring the grand jurors find the LLDM Church's religious doctrines were false or fraudulent.  (Id. at 3.)  He further argues that the Government's coercion theory rests on promulgating "a religious doctrine that it is a 'blessing' in the eyes of God to engage in sexual acts," (id. at 13), and that such promulgation cannot constitute a crime under United States v. Ballard, 322 U.S. 78 (1944).

These are, at heart, First Amendment arguments grounded in the Free Exercise Clause.  (García Mot. at 10-11.)  The Court is highly skeptical that these arguments, if true, would warrant dismissal of the Indictment.  As the Government notes, the charges in the Indictment do not, in fact, turn on the truth of the LLDM Church's religious tenets, (Gov. Opp. at 7 n. 2), and the Court is aware of no case law or statute that would effectively license religious leaders to engage in sex trafficking so long as it were linked to religious belief, United States v. Sun Myung Moon, 718 F.2d 1210, 1227 (2d Cir. 1983) ("The First Amendment does not insulate a church or its members from judicial inquiry when a charge is made that their activities violate a penal statute.").

But for the purposes of this motion, the Court need only decide whether García requires disclosure of the grand jury materials to make his First Amendment arguments.  On this point,

García wholly fails to show how the extraordinary remedy of grand jury disclosure would aid his forthcoming constitutional arguments to dismiss the Indictment.  The previewed arguments are, at bottom, legal theories that turn on the face of the Indictment.  The Indictment outlines the doctrines of the Church, (dkt. no. 4 ¶ 7), and the manner in which Defendants "wielded the power and influence of the LLDM Church to lure, manipulate, and coerce minor and adult victims," including by "holding out the promise of blessings if they submitted to the abuse," (id. ¶¶ 24(a)-(c)).  Challenges to the charges can rest upon the Indictment itself.  Nothing in the Government's presentation or legal instructions to the grand jury would have any relevance to such a facial challenge.

García, however, speculates that the sealed grand jury materials might support such a motion and seeks grand jury testimony to see "[w]ho allegedly said what to whom" in order to rebut the Government's theory of coercion.  (García Mot. at 11.) García also argues that the grand jury instructions and testimony are necessary to affirm his supposition that the Government improperly instructed the grand jury with respect to the way the legal doctrine applies to the facts.  (Id. at 13-14.)  Even assuming this legal argument has merit, "[m]ere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy."  United States v. Phillips, 2023 WL 6812286, at *2

(S.D.N.Y. Oct. 16, 2023) (citation omitted).  The particularized need showing is not met by speculative claims, such as these, that the documents may offer potential support for a future motion on these grounds.  See Leung, 40 F.3d at 582; see also United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958).  García's motion to dismiss on these theories can be formulated entirely with the charges set out in the Indictment and the discovery on hand.  Accordingly, García's anticipated First Amendment arguments do not warrant disclosure of the grand jury materials.

ii)  Venue and RICO Allegations

García also argues that the factual basis for Count Four of the Indictment is absent from discovery, and given it is the sole count permitting venue in the Southern District, transcripts are necessary.  The Court again disagrees.  The Government has sufficiently alleged proper venue in the Indictment, and any challenge to that effect is an issue for trial, not for unsealing grand jury transcripts.  See United States v. Ohle, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010); see also United States v. Calandra, 414 U.S. 338, 345 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.").

In a similar vein, García's argument that the materials are required to dispute the RICO charge also fails to demonstrate government misconduct or a particularized need.  García argues the

8

elements of the RICO charge are not met because none of the alleged acts were the purpose of the Church. (García Mot. at 22.) As the Government notes, and the Court agrees, this mischaracterizes the Indictment. (Gov. Opp. at 12.) Nonetheless, whether the Indictment adequately alleges the requisite elements of a RICO enterprise turns on the face of the Indictment and has no bearing on the evidence that was presented to the grand jury. Accordingly, García again fails to meet the high bar required to unseal grand jury proceedings on this ground.

### iii) Alleged Post-Indictment Subpoenas

García separately argues that the Government issued post-indictment grand jury subpoenas for the improper purpose of trial preparation. (García Mot. at 24-26.) But García points to no evidence other than the fact that the subpoenas were issued after the Indictment was returned. (See id.) Standing alone, the mere fact that subpoenas were issued after indictment does not satisfy Defendants' heavy burden to show that their issuance undermines the presumption of regularity; on the contrary, grand jury subpoenas can always be used post-indictment for investigative purposes. See Leung, 40 F.3d at 581; see also United States v. Sasso, 59 F.3d 341, 351-52 (2d Cir. 1995) ("Where there was some proper dominant purpose for the postindictment subpoena, however, the government is not barred from introducing evidence obtained thereby."). Ultimately, "[t]here is a presumption that [the

Government's] subpoena had a proper purpose," see Sasso, 59 F.3d at 352, and García has failed to rebut that presumption.

In any event, even if these subpoenas were issued improperly, which the Court highly doubts, the alleged issuance of post-indictment subpoenas would still not create a particularized need required to unseal pre-indictment exhibits and proceedings. Cf. In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels), 767 F.2d 26, 30 (2d Cir. 1985) (stating that remedies for improper subpoena issuance include quashing the subpoenas or barring use of that evidence at trial).

### B. Joaquín's Motion

Defendant Joaquín, meanwhile, offers an entirely different basis to compel disclosure allegedly grounded in the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C.A. § 2000bb et seq. RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). The statute recognizes an exception where the Government may substantially burden an exercise of religion if that "application of the burden to the person" passes a strict scrutiny analysis. 42 U.S.C. § 2000bb-1(b). In sum, Joaquín speculates that the grand jury presentation violated the First Amendment and RFRA by allegedly linking the LLDM Church's doctrine to the charges, thus "substantially burden[ing], LLDM's exercise of religion," without

10

conducting a strict scrutiny analysis. (<u>See</u> Joaquín Mot. at 2-3.)

Joaquín's arguments fail for reasons similar to those described in the Court's discussion of García's First Amendment challenge. Joaquín makes no specific allegation of government misconduct in the Government's grand jury presentation, and his prospective motion to dismiss on RFRA grounds is a legal argument that turns on the face of the Indictment itself. Accordingly, Joaquín also fails to articulate the particularized need necessary to overcome the centuries-old presumption of secrecy codified in Rule 6(e).

**<u>CONCLUSION</u>**

For these reasons, Defendants' motions for disclosure are <u>DENIED</u> on the papers.

The Clerk of Court shall close Dkts. 51-53.

**SO ORDERED.**

Dated:   New York, New York
         July 22, 2026

_____
LORETTA A. PRESKA
Senior United States District Judge