**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NAASON JOAQUIN GARCÍA, et al.,<br><br>Defendant. | 25-cr-370 (LAP) |

**DEFENDANT NAASON JOAQUIN GARCÍA'S REPLY BRIEF IN SUPPORT OF MOTION (1) TO DISMISS THE INDICTMENT, AND (2) FOR A BILL OF PARTICULARS**

Defendant Naason Joaquin García ("Naason Garcia"), by and through his counsel, respectfully submits his Reply Brief in support of his Motion for: (1) an order dismissing the Indictment in this matter; or (2) an order directing the Government to file a bill of particulars.

Dated: September 11, 2026

Respectfully submitted,
WERKSMAN JACKSON & QUINN LLP

By: /s *Caleb Mason*
Caleb Mason
Alan Jackson
Evan Wolk
888 West 6th Street, 4th Floor
Los Angeles, California 90017
Tel: (213) 688-0460
Email: cmason@werksmanjackson.com
ajackson@werksmanjackson.com
ewolk@werksmanjackson.com
*Attorneys for Defendant*
*Naason Joaquin García*

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

ARGUMENT ........ 1

**I.** DISMISSAL IS WARRANTED BASED ON LACK OF VENUE, THE FIRST AMENDMENT, AND IMPERMISSIBLE DUPLICITY ........ 2

- **A.** The Opposition Fails to Rebut the Arguments for the Absence of Venue ........ 3
  - **1.** The Opposition Fails to Address the Indictment's Self-Contradictory Assertions About the Possession and Creation of the Alleged Videos ........ 4
  - **2.** The Opposition Fails to Defend Its Reliance on Non-Element Conduct ........ 5
  - **3.** The Opposition Fails to Justify the Use of the Vague Boilerplate "In the Southern District of New York and Elsewhere" Language Should Support Venue ........ 9
- **B.** The Indictment Indeed Violates the Free Exercise Clause, the Religious Freedom Restoration Act, and Selectively Prosecutes Mr. Garcia ........ 12
  - **1.** The Opposition Fails to Demonstrate How The Jury Would Not Violate the *Ballard* Principles ........ 13
  - **2.** The Opposition Fights Straw Men Rather than Mr. Garcia's Actual Arguments ........ 17
  - **3.** The Opposition Fails to Refute that the Argument that this Prosecution Substantially Burdens Mr. Garcia's Religious Exercise and Provides No Adequate Compelling Government Furthered by the Least Restrictive Means ........ 19
  - **4.** The Opposition Fails to Refute the Argument that Mr. Garcia Was Selectively Prosecuted ........ 21
- **C.** The Government Fails to Rebut Mr. Garcia's Arguments that the Indictment Is Impermissibly Duplicitous ........ 23

**II.** THE COURT SHOULD, IN THE ALTERNATIVE, DIRECT THE GOVERNMENT TO FILE A BILL OF PARTICULARS ........ 26

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abouammo v. United States*,
146 S.Ct. 1571 (2026)....................5, 6, 7, 8

*Bonte v. United States Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010)....................2

*Cole v. State of Ark.*,
333 U.S. 196 (1948)....................28

*Headly v. Church of Scientology Int'l*,
687 F.3d 1173 (9th Cir. 2012)....................16

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir. 1996)....................19

*Napoli v. National Surety Corporation*,
No. 21-CV-9279, 2022 WL 1943776 (S.D.N.Y. May 19, 2022)....................2

*Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,*
393 U.S. 440 (1969)....................17

*Salinas v. United States*,
522 U.S. 52 (1997)....................6, 7

*United States v. Ballard*,
322 U.S. 78 (1944)....................12, 13, 19

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987)....................26, 30

*United States v. Chen*,
378 F.3d 151 (2d Cir. 2004)....................26

*United States v. Conde*,
309 F.Supp.2d 510 (S.D.N.Y. 2003)....................4

*United States v. Davis*,
689 F.3d 179 (2d Cir. 2012)....................3

*United States v. Ehrgott*,

182 F. 267 (C.C.S.D.N.Y. 1910) ........ 8, 9

*United States v. Frey*,
736 F.Supp.3d 128 (E.D.N.Y. 2024) ........ 13

*United States v. Long*,
697 F. Supp. 651 (S.D.N.Y. 1988) ........ 10

*United States v. Mackey*,
No. 21-CR-80, 2022 WL 2093012 (E.D.N.Y. May 13, 2022) ........ 27

*United States v. Mapp*,
No. 95-CR-1162, 1996 WL 506933 (E.D.N.Y Sept. 3, 1996) ........ 10

*United States v. McDermott*,
245 F.3d 133 (2d Cir. 2001) ........ 25

*United States v. Naranjo,*
14 F.3d 145 (2d Cir. 1994) ........ 7, 9

*United States v. Prawl*,
149 F.4th 176 (2d Cir. 2025) ........ 2, 9, 19

*United States v. Purcell*,
967 F.3d 159 (2d Cir. 2020) ........ 8

*United States v. Rigas*,
605 F.3d 194 (3d Cir. 2010) ........ 2, 24

*United States v. Rivera*,
799 F.3d 180 (2d Cir. 2015) ........ 14

*United States v. Rodriguez-Moreno*,
526 U.S. 275 (1999) ........ 5, 6, 7

*United States v. Salazar*,
485 F.2d 1272 (2d Cir. 1973) ........ 27

*United States v. Socony-Vacuum Oil Co.,*
310 U.S. 150 (1940) ........ 8

*United States v. Spraggins*,
No. 1:19-CR-00821, 2021 WL 4264418 (N.D. Ill. Sep. 20, 2021) ........ 10

*United States v. Stein*,
541 F.3d 130 (2d Cir.) ... 2

*United States v. Sturdivant*,
244 F.3d 71 (2d Cir. 2001) ... 24

*United States v. Thompson*,
896 F.3d 155 (2d Cir. 2018) ... 9

*United States v. Wilson*,
No. 01-CR.53, 2001 WL 798018 (S.D.N.Y. July 13, 2001) ... 27

*United States. v. Dawkins*,
999 F.3d 767 (2d Cir. 2021) ... 2

**Constitutional Provisions**

U.S. CONST. amend. I ... 12
U.S. Const. amend. VI ... 9, 12, 28
U.S. Const. art. 3, § 2, cl. 3 ... 9

**Statutes**

18 U.S.C. § 1589(a) ... 16
18 U.S.C. § 1591 ... passim
18 U.S.C. § 1591(a) ... 13, 14
18 U.S.C. § 1591(e) ... 15, 16, 17
18 U.S.C. § 1594(c) ... 7
18 U.S.C. § 1961 ... 5
18 U.S.C. § 1962(d) ... 6
18 U.S.C. § 2251 ... 7, 8
18 U.S.C. § 2251(a) ... 8
18 U.S.C. § 2251(e) ... 8
18 U.S.C. § 371 ... 6
28 U.S.C. § 112 ... 5
42 U.S.C. § 2000bb-1(a) ... 12, 19
42 U.S.C. § 2000bb-1(b) ... 21

**Rules**

Fed. R. Crim. P. (7)(f) ... 29
Fed. R. Crim. P. 12(b)(3)(A)(i) ... 3, 13

**Other Authorities**


J. David McSwane et al., Federal Judges Chastise Trump's Justice Department for "Unlawful," "Unethical" and "Unseemly" Conduct, PROPUBLICA (July 28, 2026, at 5:00 ET), https://www.propublica.org/article/justice-department-presumption-of-regularity ........ 11

NOTICIAS TELEMUNDO, *EN VIVO: Conferencia de Prensa Sobre la Detención del Líder de la Iglesia La Luz del Mundo* (YouTube, June 6, 2019), https://www.youtube.com/watch?v=FGUvCe5DndI ........ 22

## INTRODUCTION

The Government's Opposition directs its First Amendment arguments at a straw man. Its venue arguments refuse to acknowledge controlling recent Supreme Court caselaw. Its duplicity arguments rely on a misstatement of its own Indictment, thus implicitly acknowledging that there really are multiple distinct conspiracies alleged in the Indictment. And its particularity argument—that the Government should be excused from having to specify what a criminal defendant is accused of, on the grounds that if people knew what they're accused of, they might lie about it—flies directly in the face of hundreds of years of hard-won due process principles. Mr. Garcia's Motion has merit, and the Government's Opposition fails to show otherwise.

## ARGUMENT

This Court should dismiss the Indictment because (a) venue in this District is lacking, (b) the Indictment violates the First Amendment, and (c) the Indictment is impermissibly duplicitous. In the alternative, the Court should direct the Government to file a bill of particulars, specifying (a) the factual basis for a claim of SDNY venue; (b) the alleged conduct claimed to constitute force, fraud, or coercion; (c) the alleged conduct claimed to constitute "commercial sex activity"; and (d) the "LLDM doctrines" alleged to have been promulgated, manipulated or corrupted.

The Motion set forth in detail the legal basis for these requests. As set forth herein, the Government's Opposition fails to address several of the defense's arguments, thereby conceding them; and as to the others, the Government offers non-responsive straw man arguments.

It is well-settled in the Second Circuit that a party concedes an argument by failing to address it in an opposition brief. *United States v. Prawl*, 149 F.4th 176, 187–188 (2d Cir. 2025); *Napoli v. National Surety Corporation*, No. 21-CV-9279(JSR)(RWL), 2022 WL 1943776, at *6 (S.D.N.Y. May 19, 2022) (collecting cases); *see Bonte v. United States Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Here, Mr. Garcia made explicit, substantive, and detailed venue arguments based on the Indictment itself:[1] specifically, the fact that the Indictment claims venue based on a 2015 flight from Europe to New Jersey on which it claims Mr. Garcia possessed certain videos—but then, on the next page, claims that those very same videos were not created until 2016 and 2017. The Government fails to respond to this argument in its Opposition brief. As to the arguments the Opposition does address, the Government's arguments rely on logical fallacies; fail to satisfy settled caselaw; and make unsupported assumptions. This Court should, after carefully considering both sides' arguments, conclude that the Government's indictment cannot constitutionally be brought to trial.

## I. DISMISSAL IS WARRANTED BASED ON LACK OF VENUE, THE FIRST AMENDMENT, AND IMPERMISSIBLE DUPLICITY

An indictment fails to satisfy due process when it does not provide notice to the defendant of the charge he must defend, violates constitutional protections, or is structurally deficient. *See United States. v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (notice); *see also United States v. Stein*, 541 F.3d 130, 144–145 (2d Cir.) (constitutional violations); *see also United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) (duplicity).

[1] The Government is therefore incorrect when it dismisses the venue arguments as "fact-based," Dkt. 65, p. 5. Mr. Garcia is relying on the face of the Indictment for this argument.

The Indictment here checks all three boxes. The Indictment fails to support venue in the Southern District of New York. The Indictment uses religious belief to bootstrap factually consensual sexual contact into alleged crime, by claiming that a person who consents to sex because of her religious beliefs has not actually consented, or that doctrines about salvation and the afterlife are "coercion." And the Indictment is patently duplicitous, charging two separate conspiracies, the first of which Mr. Garcia could not possibly have been part of, because he was a toddler.

**A. The Opposition Fails to Rebut the Arguments for the Absence of Venue**

A venue defense must be raised pretrial if the basis for the motion is reasonably available and can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(A)(i). When "a defendant is charged with multiple crimes in a single indictment, the government must satisfy venue with respect to each charge." *United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012).

Mr. Garcia's Motion explained in detail why there is no venue in SDNY. The Opposition fails to address the logical inconsistencies on the face of the Indictment (which claims that Mr. Garcia possessed videos in 2015 that the Indictment, on the very next page, alleges *did not exist* until 2017); fails to justify the Indictment's reliance on non-elements to establish venue (possession of those (as yet non-existent) videos is not an element of any charged offense); and fails to even gesture at any reason why this case was brought in New York or should be tried there.[2]

[2] Moreover, the Government's claim that a flight from Lisbon to Newark passed "over the waters of the Southern District of New York" is also not true. Flights from Europe into Newark

### 1. The Opposition Fails to Address the Indictment's Self-Contradictory Assertions About the Possession and Creation of the Alleged Videos

"An indictment is defective if it contains logically inconsistent counts." *See United States v. Conde*, 309 F.Supp.2d 510, 511 (S.D.N.Y. 2003) (dismissing an indictment because the allegations in one count of an indictment, if proven, would negate the allegations in another count). The Indictment here contains logically inconsistent counts because the allegations in Count Six about when the alleged child pornography was created (2016 at the earliest), if true, would negate the venue allegations in Counts One, Two, and Five (claiming SDNY venue based on alleged possession of (expressly) *those same videos* in 2015).

On its face, Count Six is logically inconsistent with Counts One, Two, and Five. Count Six alleges that Mr. Garcia participated in the creation of sexually explicit videos involving minors, beginning on May 23, 2016. Indictment ¶ 37(b). Yet Count Five alleges that Mr. Garcia possessed these same videos while flying "over the waters of the Southern District of New York" in June 2015, a year *before* the media were allegedly effectuated. Indictment ¶ 36. Counts One, Two, and Six allege or incorporate this same 2015 flight. *Id.* ¶¶ 24(f), 32, 37(d). The Indictment is logically inconsistent: if the video-creation allegations are true, then the "flyover venue" allegations are false.

---

approach the airport from the *north*, not the east. This is a factual point that cannot be addressed in a pleadings challenge. However, given that the Government has chosen to rest its venue claim on "flyover jurisdiction" deriving, it says, from a Lisbon-to-Newark flight in 2015, the defense suggests that the Court convene an evidentiary hearing at which appropriate pilots, ground control officials, or airline personnel, can be subpoenaed to address this question.

Mr. Garcia's Motion made this argument directly and explicitly. The Government's Opposition never addresses it. The Motion also explained that JFK Airport, where Mr. Garcia allegedly landed on a flight July 2017 flight from South Africa, see ¶¶ 24(f), 32, 36, 37(d), is also not in the Southern District of New York. It is in Queens, which is in the Eastern District. *See*, *e.g*., 28 U.S.C. § 112. The Government's Opposition never addresses this fact either. *See generally* Dkt. 65. The Founders included the vicinage provision of the Sixth Amendment in our Constitution for good reason, and that it is a sign of disrespect for the Constitution and this Court to fail to even make an attempt to explain why venue exists in this Court.

**2. The Opposition Fails to Defend Its Reliance on Non-Element Conduct**

Furthermore, the Supreme Court's reasoning in *Abouammo v. United States*, 146 S.Ct. 1571, 1577–1579 (2026), is directly pertinent to Count One of the Indictment. In *Abouammo*, the Court held, and strongly emphasized, that when a criminal statute (of which RICO is a paradigm case) reduces the number of elements that need to be proved, "that ease comes [with] one cost: Because the Government need show nothing else, its venue options are confined." *Id.* at 1579. *Abouammo*'s holding flows from the Court's "essential conduct elements test," pursuant to which venue may be established only where the elements of an offense were committed. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279–281 (1999).[3] Fewer elements means fewer venue options. The bridge

[3] The essential conduct elements test applies to all criminal statutes that do not have their own separate venue provisions. *Abouammo*, 146 S.Ct. at 1577 n.3. Criminal RICO does not have a prescribed venue provision. *See* 18 U.S.C. § 1961 *et seq.* (no criminal RICO venue statute).

connecting *Abouammo, Rodriguez-Moreno*, and the instant case is *Salinas v. United States*, 522 U.S. 52 (1997), which established RICO as one of those "easy proof, confined venue" statutes.

In *Salinas*, the Supreme Court determined that an overt act is *not* a required element of a RICO Conspiracy under 18 U.S.C. § 1962(d). *Salinas*, 522 U.S. at 63. It relied on the statute's language, specifically its omission of the overt act requirement, in contrast to the express inclusion of an overt act requirement in the general conspiracy statute, 18 U.S.C. § 371. *Salinas*, 522 U.S. at 63. The only proscribed act under RICO is the agreement itself. *See id.*

Thus, because an overt is not an element of § 1962(d), the Government's venue options are confined. Venue exists for a RICO case only in the district in which the agreement was formed. But the Indictment does not allege (nor could it) that the charged RICO agreement was formed in SDNY. Indeed, the only allegations of any contact at all with the Southern District of New York are the same "flyover venue" allegations discussed above, alleging possession of sexual images of minors. Even if the Government were permitted to indulge in the blatant logical contradiction in its Indictment, and simultaneously allege that these images were possessed in 2015, but not created until 2016; and even if the Government were permitted to indulge in the false assertion that flights from Lisbon to Newark fly over Manhattan; the Newark flight would still not support venue, because it's not an element of the charged RICO offense. *Abouammo, Rodriguez-Moreno*, and *Salinas* combine to create a simple rule. The ease of proving a RICO conspiracy (the elimination of the overt act requirement) comes with the cost of a

limitation in venue options. You must charge RICO where the agreement was. The Government here, the prosecutors in the Southern District of New York, did not do that, and cannot do that.

Mr. Garcia's Motion made these arguments expressly and at length. The Government's Opposition ignores them. Instead, the Opposition simply asserts, in direct contradiction to *Abouammo, Rodriguez-Moreno*, and *Salinas*, that an overt act can establish venue for Count One (the RICO Conspiracy). Dkt. 65, at 6. The Opposition does not engage with these cases at all. It just ignores them. And then it cites *United States v. Naranjo,* 14 F.3d 145, 147 (2d Cir. 1994), decided long before *Abouammo, Rodriguez-Moreno*, and *Salinas*, and addressing an entirely different statute. *Naranjo* is inapposite to RICO; and in any case, an attorney cannot simply cite a thirty-year old circuit case and ignore three recent Supreme Court cases. If the Government had arguments about why *Abouammo, Rodriguez-Moreno*, and *Salinas* do not negate venue here, it could have and should have made them. But it did not.

Further, the Indictment's use of the alleged media possession and transportation to establish venue for Counts Two and Five, *see* Indictment ¶ 32, 36, is inadequate for the same reasons. The relevant statutes, 18 U.S.C. §§ 1594(c), 2251, lack an overt act requirement. Thus, they too must be charged where the agreement allegedly occurred, and the Government cannot use the alleged media possession and transportation to establish venue. Even if the Court interprets these statutes as an including an overt act element, venue is still improper.

Overt acts are defined as conduct that is "part of the continuous cooperation necessary to keep the conspiracy alive." *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 253 (1940) (internal citations omitted). An overt act "cannot succeed the completion of the contemplated crime." *United States v. Ehrgott*, 182 F. 267, 273 (C.C.S.D.N.Y. 1910).

Here, the alleged possession or transportation of child pornography cannot constitute an overt act for Counts Two or Five because such an act is not necessary to further the conspiracies alleged, and it occurs after the completion of the contemplated crime in Count Two. The conspiracies alleged in Counts Two and Five are not "kept alive" by the possession or transportation of said media.

In *Abouammo*, the Supreme Court emphasized that the contemplated *effects* of a crime could not figure in determining where [the defendant's] crime [was] committed." 146 S.Ct. at 1578 (internal quotations omitted). Here, the charged crime is conspiracy to sexually exploit minors by *creating* sexual images or videos. 18 U.S.C. § 2251(a), 2251(e). The charged crime is the conspiracy to *create*—not to possess. One of the contemplated *effects* of creation is, to be sure, the existence of the thing created, and thereafter the possession of the thing created, by someone.

However, the possession or transportation of child pornography is not the proscribed conduct of § 2251(a). Upon the sexual exploitation of minors, even if created for the purpose of developing videos or images, the crime is complete. Even one of the Government's own cited cases, *United States v. Purcell*, has expressly stated that a defendant charged with a violation of § 2251 is "subject to venue where he *created* the

video recording [or] in the district in which he *enticed* the minor." 967 F.3d 159, 186 (2d Cir. 2020), citing *United States v. Thompson*, 896 F.3d 155, 173 (2d Cir. 2018) (applying the essential conduct elements test to 18 U.S.C. § 2251). Possession or transportation is not one of the listed bases for venue. Instead, possession or transportation of these images would inevitably occur after the crime, thereby causing it to be incompatible with the definition of an overt act under *Ehrgott*.

These arguments, again, are left unaddressed by the Opposition and are appropriately conceded. *See generally* Dkt. 65; *Prawl*, 149 F.4th at 187–188. The Opposition's mere use of *Naranjo* to state that an overt act will constitute a basis for venue does nothing to explain how the alleged possession or transportation of sexually explicit photos of minors would constitute an overt act for Counts Two or Five. *See* Dkt. 65, at 6. For the reasons stated in Mr. Garcia's Motion and this Reply, it does not. Therefore, because this possession fails to establish itself as an overt act for any of the relevant charges, cases finding flyover jurisdiction via an overt act cannot be used to establish venue.

### 3. The Opposition Fails to Justify the Use of the Vague Boilerplate "In the Southern District of New York and Elsewhere" Language Should Support Venue

The Constitution, in two separate places, protects us from being tried in a state or district other than where an offense was allegedly committed. U.S. Const. art. 3, § 2, cl. 3; U.S. Const. amend. VI. Here, as set forth in the Motion, there is no basis, whether from the Indictment or (not that the defendant should have to search there) from the discovery, for a claim that the charged crimes were committed in the Southern District of New York.

The prosecutor has refused to disclose what Mr. Garcia did in the Southern District of New York. Their Opposition persists in that refusal.

If the boilerplate phrase that criminal conduct occurred "in the Southern District Of New York and elsewhere" were sufficient to establish venue against pretrial challenge, then the Court would risk "the waste of significant resources, including a jury's time," trying a case in a district in which the case should never have been brought. *United States v. Spraggins*, No. 1:19-CR-00821, 2021 WL 4264418, at *2-3 (N.D. Ill. Sep. 20, 2021). The Founders surely did not place their emphasis on the vicinage right in the expectation that the only way it could be enforced was to hold an entire trial, then look back to see whether any of the facts involved the forum district. The Founders surely did not intend to force a defendant (and a jury and the Court) to wait until the end of the prosecution's case before being able to raise a venue argument. If the Court accepts the Government's contention that its boilerplate "in the Southern District of New York and elsewhere" language is sufficient, then that is where we will be.

It simply makes no practical or jurisprudential sense for a court to spend hundreds or thousands of hours of court time, attorney time, and juror time to hear the Government's case entire case before deciding whether the forum was constitutionally proper in the first place. This massive risk is mitigated simply by requiring specificity, which some courts have agreed with. *See e.g.*, *United States v. Long*, 697 F. Supp. 651, 655 (S.D.N.Y. 1988) (holding that the government must allege with enough "specificity [such] that the charged acts support venue in this district"); *United States v. Mapp*, No. 95-CR-1162, 1996 WL 506933, at *9 (E.D.N.Y Sept. 3, 1996) (same). The Court cannot

take the risk of simply trusting the Government's word, as the Government asks the Court to do, Dkt. 65, at 6. The presumption of regularity, if it was ever strong enough to encompass the penultimate sentence on that page, no longer is.[4]

If such vague boilerplate were sufficient to establish venue against all pretrial challenges, then the Government could bring anyone to trial in any district. All pretrial challenges would be brushed off with the words at the bottom of Page 6 of the Opposition: Just trust us, Judge, we'll put on something at trial, we don't have to tell the defense anything until then. This cannot be constitutional. It inverts the Sixth Amendment's vicinage guarantee to tell a defendant that he has to go through an entire trial in a district before he can challenge whether the Government has the right to try him there in the first place.

The structure of the Rules of Criminal Procedure demonstrates why the Government's position cannot be correct. Rule 12(b)(3)(A)(i) lists improper venue as an enumerated defect that must be challenged by a defendant pretrial. It would be incoherent to require that defendants challenge venue pretrial, while at the same time excusing the Government from any obligation to make any particularized allegations that support venue.

The Opposition does not offer any legal, constitutional, or policy justification for allowing any USAO to haul anyone into court by simply putting boilerplate "in this

[4] J. David McSwane et al., Federal Judges Chastise Trump's Justice Department for "Unlawful," "Unethical" and "Unseemly" Conduct, PROPUBLICA (July 28, 2026, at 5:00 ET), https://www.propublica.org/article/justice-department-presumption-of-regularity (collecting cases).

district and elsewhere" language into an Indictment. *See generally* Dkt. 65. Instead, it blithely asks to the Court to trust that it will put something on at trial. Dkt. 65, at 5. What it will put on it won't say. *Id.*

The defense makes a simple request of the Court: hold the Government to its word, before trial. If the Government really has some particularized charges about any of the defendants doing anything in the Southern District of New York, then it should be ordered to say so—*before* trial. Waiting until the end of the Government's case at trial would waste significant judicial resources and enable the Government to put *anyone* to trial in *any* district, before any challenge to venue could be had. Such a rule would make a mockery of the Sixth Amendment.

### B. The Indictment Indeed Violates the Free Exercise Clause, the Religious Freedom Restoration Act, and Selectively Prosecutes Mr. Garcia

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. CONST. amend. I. As a corollary of the First Amendment, congressional statutes and cases have amplified religious protections. *See e.g.,* 42 U.S.C. § 2000bb-1(a); *United States v. Ballard*, 322 U.S. 78, 86 (1944);

Here, the Indictment facially scrutinizes a religion, requiring the jury to assess the veracity of Mr. Garcia's religion in contravention of *Ballard*; violates his rights under the Religious Freedom Restoration Act (RFRA), substantially burdening his religious exercise; and acts as a vehicle for a selective prosecution against him. The Opposition fails to establish that the Government has met its burden under RFRA to use the least restrictive means to further a compelling government interest.

### 1. The Opposition Fails to Rebut the Argument that this Prosecution Violates *Ballard*

Courts are prohibited from finding that (or inquiring whether) religious doctrines are false, or finding (or alleging, or instructing) that the promulgation of a religious doctrine constitutes fraud. *Ballard*, 322 U.S. at 86 (holding that the jury may not assess the veracity of one's religion). The Indictment here asks the trier of fact to do what *Ballard* forbids. It alleges, in sum, that Mr. Garcia used religious blessings and the threat of eternal damnation to "coerce" sexual activity. Indictment ¶¶ 24(a), 24(c). These allegations form the basis for the charges under 18 U.S.C. § 1591, which prohibits commercial sex activity by "fraud or coercion." *Id.* ¶¶ 33, 37. The Government consequently must demonstrate that these religious doctrines constitute "fraud or coercion."

"Fraud" means "a knowing misrepresentation of a material fact made to induce another to act to his or her detriment." *United States v. Frey*, 736 F.Supp.3d 128, 138 (E.D.N.Y. 2024) (internal quotations omitted). *Ballard* directly forbids any court from making a finding that promulgation of a religious doctrine is fraud, and thereby a "misrepresentation of a material fact." 322 U.S. at 86. Accordingly, to convict Mr. Garcia under 18 U.S.C. § 1591(a), a jury would have to find that Mr. Garcia's religious doctrines about salvation and damnation are factually false misrepresentations, completely contravening *Ballard*. If that were the basis for the Indictment's charge, that direct contradiction would justify dismissal.

Assuming the Indictment rests on "coercion," coercion requires a threat of serious harm against a person. 18 U.S.C. § 1591(a). "Serious harm" exists if the harm is sufficiently serious to compel a reasonable person to engage in commercial sexual activity. This test is inherently a hybrid objective-subjective standard. *United States v. Rivera*, 799 F.3d 180, 186–187 (2d Cir. 2015). A jury would accordingly need to find that foregoing eternal salvation or risking damnation constitutes cognizable, "sufficiently serious" harm. But to do that, the jury would need to determine the reasonableness of believing in eternal salvation and damnation—and of Mr. Garcia's influence thereon—in the first place.

Two possible conclusions follows: (1) if the jury finds that threats and promises about the afterlife would not be sufficient to compel a reasonable person, then the doctrines must either be false, or lacking in evidence such that no conclusion about their truth is warranted. Alternatively, (2) if the jury finds that threats and promises about the afterlife *would* be sufficient to compel a reasonable person, then the doctrine must be true. There is no way the jury can answer the question as to whether a reasonable person would be compelled by threats and promises about the afterlife, without asking, and evaluating, whether the afterlife is real. This they cannot do under *Ballard*.

The Government has charged this case under a statute that has an objective test for "coercion." The Government cannot, as it attempts to do in the Opposition, ignore the objective reasonableness test and pretend that the inquiry should be into what the alleged "*victims* believed about the consequences of failing to submit to [Mr. Garcia's alleged] directives." Dkt. 65, at 9 (emphasis added). That is not the law. The statute does *not* say

that any statement, no matter how fanciful, can be coercion, so long as someone believes it. 18 U.S.C. § 1591(e); Dkt 65, at 9. Neither do the cases.

Nor would due process or common sense permit such a doctrine. If you walk up to a stranger on the street and say, "If you don't give me the money in your wallet, I'll intercede with St. Peter and make sure you never get into Heaven," and the stranger hands over the money, is that a crime? Which crime, exactly? Fraud? Robbery? Extortion? Or none of the above. The bar exam would surely score option (d) as correct. Yet that is exactly the crime the Government accuses Mr. Garcia of here—only in an even more attenuated manner. The Government alleges that Mr. Garcia's grandfather created a religion that anointed him (Aaron) as God's apostle on Earth and then passed that religion down to his son and grandson. Meanwhile, a century passed, and five million people joined the church. And then, 2017, when Mr. Garcia, now the Apostle himself, proposes sexual contact to a woman and she acquiesces, that consent—says the Government—is actually "coerced," because they woman believed the doctrines Mr. Garcia's grandfather invented a hundred years ago. The bar exam would score this one the same way. So should this Court. Engaging in factually consensual sex with adult women who gave their consent against the background of a century-old religious doctrine is simply not "coercion."

This is what the Government fails—or refuses—to acknowledge, despite Mr. Garcia putting it front and center on the very first page of his Motion. Mr. Garcia *is not arguing* that the First Amendment means that he should be allowed to engage in conduct generally prohibited by the criminal law. He is arguing the converse: that the First

Amendment means that conduct that *is not criminal* (factually consensual sex between adults) cannot be transmuted into a crime *because of* the religious beliefs of one of the participants.

The Government is charging in this case that factually consensual sex between adults, conduct that *would not be criminal* but for the religious beliefs of one of the participants, *becomes* actually "coerced" because one adult believes that the other adult is divinely ordained. The Government is alleging that the factual consent given by women to whom Mr. Garcia made sexual advance must be deemed coercion as a matter of law *because* of the women's background religious beliefs about salvation and damnation. There is simply no precedent in our First Amendment caselaw or traditions for anything like this. "Religious coercion" is not a constitutionally recognized, or permissible, doctrine.

A person may believe in divinely ordained punishment in the afterlife, but such punishment cannot, and has never been held to, constitute "serious harm" under section 1591, or any other law. It is helpful to examine the application of 18 U.S.C. § 1589(a), which defines "serious harm" with the same language as 18 U.S.C. § 1591(e), in *Headly v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012), where the alleged mechanism of "coercion" was the threat of disassociation with the church, or "shunning." (The Indictment here also alludes to shunning.) In *Headly*, the court held that the church's threat of disassociation with the plaintiffs *did not* constitute "serious harm" because the church was entitled, under the Free Exercise clause, to disassociate with whomever it chose. A church's choice to promulgate a doctrine (whether about shunning,

or about the afterlife, or whatever) *cannot* constitute "serious harm," because promulgation of doctrine is something that churches are constitutionally entitled to do—and those doctrines cannot be subjected to judicial scrutiny. *See Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,* 393 U.S. 440, 442 (1969).

Here, even assuming the existence of a doctrine that obeying the Apostle leads to salvation and disobeying the Apostle leads to damnation; and assuming that some factual connection could be drawn between a woman's childhood exposure to that doctrine and her factual consent years later, as an adult, to Garcia's sexual advances—even granting these assumptions, there is no legal authority, or legal basis, for the claim that the creation or promulgation of a religious doctrine about the afterlife can constitute, or threaten, a "serious harm." No court has ever so held, and the statutory language contains nothing to support that idea. *See* 18 U.S.C. § 1591(e).

Finally, the Opposition's assertion that the spiritual coercion theory applies only to Count Three lacks merit. Dkt. 65, at 10. It plainly animates the entire Indictment. Count One expressly asserts that religious blessings were used to coerce victims, and Counts Two also alleges coercion. And the Government argues, at length, in its Opposition, that "spiritual coercion" is a viable theory. *See* Dkt. 65, at 8–10.

### 2. The Opposition Fights Straw Men Rather than Mr. Garcia's Actual Arguments

Despite Mr. Garcia's express assertions confining Mr. Garcia's argument to whether religion can be used to *create* criminal activity, rather than a blanket insulation

from the criminal law, the Opposition seizes the straw man by his straw collar and shakes him vigorously. Dkt. 65, pp. 8-12.

The Opposition begins by attacking an argument Mr. Garcia never made. The Opposition asserts that religion may not insulate criminal activity from prosecution. Dkt. 65, at 7–8. But no one is arguing to the contrary. Indeed, on the very first page of Mr. Garcia's Motion Dkt. 59, at 1, he says, explicitly, that he is not making that argument. Mr. Garcia's actual argument is the one set forth above, that otherwise legal conduct cannot be transmuted into crime on the basis of the participants' religious beliefs. The Government does not respond to that argument.

Finally, the Opposition's assertion that the "jury will not be asked whether it is reasonable to believe in Hell," Dkt. 65, at 10, is an impressive demonstration of chutzpah. The Government is expressly asking the jurors to deliberate as to whether the possibility of damnation in Hell constitutes "serious harm," such that the implicit threat of damnation constitutes "coercion." These are statutory terms defined based on *what a reasonable person would believe*. "Whether or not it is reasonable to believe in Hell" is therefore quite literally the precise question the Government wants to ask the jury to evaluate.[5]

[5] Nor can the Government be permitted to evade this issue by suggesting that "reasonable person" should be read here as "reasonable member of LLDM." That is patently circular: that would be defining the class as including only people who *already have* the belief at issue. But reasonableness means reasonableness; our law does not recognize "reasonableness for me, but not for thee" arguments.

As *Ballard* teaches, the Constitution does not permit courts or juries to engage in such inquiries. And it does not allow the Government to put them in a position where they are forced, or likely, to do so.

### 3. The Opposition Fails to Refute the Argument that this Prosecution Substantially Burdens Mr. Garcia's Religious Exercise, and Provides No Adequate Compelling Government Interest Furthered by the Least Restrictive Means

Defendants need only prove two elements to establish a prima facie RFRA violation: (1) that they were engaged in religious exercise, and (2) that the Government substantially burdened. 42 U.S.C. § 2000bb-1(a). Both elements are met here.

First, as set forth in the Motion, a person is engaged in religious exercise if he sincerely holds a particular belief that is religious in nature. *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996). Here, Naason Garcia holds multiple sincere, religious-in-nature beliefs, including that he is the acting Apostle, serving as a spiritual guide and teacher of the LLDM Church faith and the intermediary between his God and humanity, and that he has the ability to promise religious blessings. The Opposition does not contest this element and thus concedes it. *Prawl*, 149 F.4th at 187–188.

Second, the Government has substantially burdened Mr. Garcia's religious exercise because this prosecution places substantial pressure on him to avoid providing religious blessings to his followers. A person's exercise of religion is substantially burdened when the state puts substantial pressure on him to modify his behavior and to violate his beliefs. *Jolly*, 76 F.3d at 476-77 (finding that being forced to choose whether to obey the Government or adhere to one's beliefs in contravention of the Government

constituted a substantial burden). This prosecution places extraordinary pressure on Mr. Garcia to abstain from promulgating the doctrines of his religion, because the Government asserts that those doctrines constitute "coercion," and their promulgation is charged as a criminal predicate act.

The Opposition is therefore misguided when it argues that there is no substantial burden on the exercise of religion, Dkt. 65, at 12, because that argument assumes that Mr. Garcia's alleged use of religious blessings constituted coercion to begin with. The argument is, in a word, circular. The Government asserts that the religious doctrines are "threats," and then argues that prohibiting "threats" is not a substantial burden. Dkt. 65, at 12. But Mr. Garcia denies that the doctrines of his religion are "threats." *See generally* Dkt 59. And the Court is no doubt aware that the doctrine of salvation or damnation in the afterlife is a definitional component of virtually every Christian denomination throughout the world. It is the core tenet of Christianity. But when La Luz del Mundo promulgates it, it is charged by the U.S. Attorney's Office as a criminal predicate act, the core deed of a criminal conspiracy. It is hard to imagine any greater burden on religious exercise than that.

The question raised by this case is whether the creation of the wholly novel theory of "spiritual coercion" as the basis for charging that factually consensual sex was actually "coerced," is the "least restrictive means" of furthering a compelling interest.

RFRA is clear: If the Government has substantially burdened an individual's religious exercise, they may only do so if their act survives strict scrutiny, a demonstration that (1) the act is in furtherance of a compelling government interest, and

(2) is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000bb-1(b). The Government has demonstrated neither.

The Government's argument that it has a "compelling interest in uniform application of laws about violent crimes," Dkt. 65, at 12, is circular and non-responsive. Of course that is a compelling interest. But to apply that interest to this case requires *assuming* that the promulgation of a religious doctrine about damnation constitutes a violent crime in the first place. Yet, no statute or case has ever remotely suggested that religious doctrines about the afterlife can constitute coercion under 18 U.S.C. § 1591.

Section 1591 provides substantial definitional language about what kinds of harm can constitute coercion. The words, "spiritual" or "religious" are notably absent, and no case has ever held that they are implicitly included. The Indictment here, thus, charges an *entirely novel* crime, that no court has ever recognized, and that no prosecutor has ever before charged. This case is, therefore, the opposite of the "uniform application" of the law. "Uniform application of the law" means applying the law to defendants in the same way, across the board. It does not mean "creating a novel theory nowhere to be found in the statute or caselaw." Because no other defendant anywhere in the United States has ever been charged with a "spiritual coercion" crime, the application of the statutes here is emphatically *not* uniform and cannot suffice the strict scrutiny analysis required under the RFRA.

**4. The Opposition Fails to Refute the Argument that Mr. Garcia Was Selectively Prosecuted**

This prosecution derives from a state prosecution in California by an Attorney General who manifested clear discriminatory intent. Xavier Becerra, the Attorney General presiding over Mr. Garcia's first prosecution in California, called Mr. Garcia "sick and demented" and the LLDM Church a cult engaged in an elaborate international sex trafficking ring. https://www.youtube.com/watch?v=FGUvCe5DndI (Becerra speech).

The Government cannot dispute that Mr. Becerra was prejudiced against La Luz del Mundo and Mr. Garcia, or harbored animus toward them. And the Government cannot seriously dispute that this case is a continuation of that case. The majority of Government's discovery is Mr. Becerra's investigation. It is simply not true that the SDNY USAO investigated this case itself or re-investigated the California case.

The Government also cannot seriously assert that the Southern District of New York has anything to do with this case. If it did, the Government would not be relying on a claim of "flyover venue" based on a 2015 flight from Europe to Newark. It is res ipsa loquitur that this prosecution was hand-delivered from the California Attorney General's Office to the SDNY USAO.[6] And the defense contends that this type of handoff, with no independent SDNY interest, venue, or factual nexus, should render Xavier Becerra's discriminatory intent imputable to the New York DOJ.

---

[6] The SDNY prosecution was *not* a handoff from C.D. Cal. C.D. Cal. did not charge conspiracy, and charge anything having to do with religious doctrines. It eschewed entirely the flamboyant theory that the whole religion has been a criminal conspiracy going back a hundred years to its founding. *That* theory, and the attacks on the legitimacy of the religion itself come straight from—and only from—Mr. Becerra.

And even if the Court does not impute his animus to the SDNY USAO, the sources cited in Mr. Garcia's Motion demonstrate the wide scope of sexual abuse crimes committed in other religious groups—none of which have every led to an indictment charging that a religious denomination is a criminal conspiracy and has been since its founding. Dkt. 59, at 34.

The Opposition states that these statistics are "scant." Dkt. 65, at 14. They are not. SDNY has been the site of dozens of allegations of sexual abuse by priests, facilitated in every instance by the promulgation to children of the religious doctrine that priests are God's trustworthy shepherds. Every priest who ever abused a child did so in reliance on the religious doctrines that afforded him access and trust. Yet no case has ever charged that the religious doctrines promulgated by the leadership of the Catholic Church are criminal predicate acts, used to coerce children into sex abuse by priests. Selective prosecution means that this religion, and this defendant, were selected, while a dozen other religions and their leaders, were given a pass.

### C. The Government Fails to Rebut Mr. Garcia's Arguments that the Indictment Is Impermissibly Duplicitous

The Motion established that the Indictment is impermissibly duplicitous because it combines multiple conspiracies into one. *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001); *United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010).

First, Count One *facially* asserts and describes three separate conspiracies, involving Aaron, Samuel, and Mr. Garcia, respectively. As described in the Indictment, these alleged conspiracies occurred in different time periods (indeed decades apart),

involved different people and different acts, and had different purposes. Indictment ¶¶ 8–14; Dkt. 59, at 38–40. The duplicitous nature of these charges will prejudice Mr. Garcia because it would be impossible to determine whether a guilty verdict would be crimes allegedly committed by Aaron or Samuel, rather than Mr. Garcia. The indictment charges, in a single count, alleged crimes committed in the early 1970s when Mr. Garcia was a toddler, and alleged crimes committed in 2018, when he was 50.

The Opposition's response is that the alleged enterprise shared a common purpose of "gratifying the Apostle." Dkt. 65, at 15. But that is not what the Indictment says. The Indictment actually alleges that the purpose was to "Sexually [gratify] *each* of [sic] Aaron, Samuel, and NAASON JOAQUIN GARCIA, the defendant, when *each* served as Apostle and leader of s [sic] the Joaquin LLDM Enterprise." Indictment ¶ 23(a) (emphasis added).

The Government cannot escape this problem: Mr. Garcia could not possibly have shared the purpose of sexually gratifying Aaron, who died in 1964, four years before Mr. Garcia was born. Similarly, the alleged purpose of sexually gratifying Samuel ended when Samuel died in 2014, when he died. Consequently, the "recognizable core" of the conspiracy was different upon each change in leadership. This Indictment simply does not pass constitutional muster. *See, e.g., United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001).

The Government appears to recognize the problem it created. So in the Opposition it proposes jury instructions and a special verdict form. Dkt. 65, at 14–15. This proposal is both an acknowledgement that the Indictment is duplicitous, and an object lesson in

why the duplicitousness cannot be papered over. Jury instructions would not clarify whether a verdict on Count One incorporated alleged crimes from Aaron or Samuel's alleged conspiracies, and nothing can cure the prejudice of trying Mr. Garcia for conspiracies he was not part of. The proposal of a special verdict form is an acknowledgement by the Government that it could and should have indicted the case differently. It is an acknowledgement that someone in the U.S. Attorney's Office has recognized the defects in this indictment. An indictment that requires a special verdict form to separate out different conspiracies is an indictment that should have been charged in multiple distinct counts.

Moreover, the verdict form proposal would do nothing to cure the prejudice of evidence being introduced regarding a conspiracy that Mr. Garcia was not part of. Paradigmatically here is the Government's stated intention to call witnesses to testify about alleged sexual assaults committed by Samuel and allegedly abetted by Defendant Eva Garcia at unspecified dates in the late 1960s or early 1970s, when Mr. Garcia was a toddler. The Government does not and cannot contend that any such alleged acts were part of a conspiracy that Mr. Garcia was part of. Therefore, they cannot be constitutionally introduced in front of a jury that will render a verdict as to Mr. Garcia.

And nothing the Government proposes can change the fact that under the current Indictment, Mr. Garcia cannot ascertain whether he must prepare and present a defense as to all three alleged conspiracies or to the only one actually applicable to him. The appropriate remedy here, then, is dismissal.

## II. THE COURT SHOULD, IN THE ALTERNATIVE, DIRECT THE GOVERNMENT TO FILE A BILL OF PARTICULARS

As set forth in the Motion, an indictment must be specific enough to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial . . ." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam). When an indictment fails to provide notice to the defendant of the specific acts of which he is accused of, a request for a bill of particulars should be granted. *See* Fed. R. Crim. P. (7)(f); *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004).

The Opposition fails to rebut the argument that the Indictment here lacks the specificity required to allow Mr. Garcia to adequately prepare for trial. First, the Indictment relies on self-contradictory allegations (the alleged 2015 possession of videos simultaneously alleged to have been created in 2016 or later), and on non-element conduct (said possession) during a plane flight that landed in New Jersey, as its basis for venue in the Southern District of New York. Dkt 59, at 46–49. Accordingly, a bill of particulars is warranted to specify the Government's basis for venue. *United States v. Mackey*, 21-CR-80, 2022 WL 2093012, at *3 (E.D.N.Y. May 13, 2022) (holding that conflicting statements will warrant a bill of particulars); *see United States v. Wilson*, No. 01 CR. 53(DLC), 2001 WL 798018, at *6–8 (S.D.N.Y. July 13, 2001) (directing the Government to file a bill of particulars because in establishing venue for a charge of falsifying records, the Government's grounds for venue were the *effects* of falsified records, a non-element).

Second, because the Government has failed to specify an approximate time or place for its force allegations and has failed to detail its fraud or coercion allegations, a bill of particulars is warranted. *See United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973). As established in the Motion and as set forth herein, the Government needs to say exactly what it is claiming constitutes fraud or coercion. The Motion sets forth a century of constitutional law limiting the application of those doctrines to religious belief.

Third, particularity as to the alleged "commercial" sexual activities is necessary because it is impossible to ascertain *which* alleged victims were given the alleged "benefits"; what those "benefits" were (if they were spiritual benefits, they are not, as a matter of law, "commercial" benefits); and as to the co-defendants, when the alleged "promotion" was given—after the first alleged victim, some point in between, or after the last alleged victim. Dkt. 59, at 50–52.

Fourth, a bill of particulars should be required to specify what the Government alleges the LLDM Doctrines are, how they have been taught, and how they were "corrupted." Dkt 59, at 52–53.

The Opposition claims that the Indictment answers these requests, Dkt. 65, at 24–25, but it plainly does not, as set forth at length in the Motion and herein. The Government's primary argument, rather, is that Mr. Garcia is not entitled to particularity. Dkt. 65, at 25. Mr. Garcia submits that he is so entitled, because he has the constitutional right to effectively prepare a defense, and he cannot do so when the Government will not specify what LLDM "doctrine" it claims constitute fraud or coercion, or were "corrupted" or "manipulated"; or whether there are any allegations of legally cognizable

fraud or coercion as opposed to spiritual coercion (or fraud); or what conduct it claims constituted a “commercial” sexual act. It does not show respect for the Constitution, the ideal of justice under law, or the Court, for the Government to simply refuse to say what acts it is charging as crimes. Forcing the defendant to speculate about the conduct alleged to be criminal is unconstitutional. *See Cole v. State of Ark.*, 333 U.S. 196, 201 (1948). U.S. Const. amend. VI. But that is exactly what the Government is doing.

The Opposition claims that it should be excused from disclosing with particularity what the Government is accusing Mr. Garcia of doing because, it claims, particularized disclosure would create a danger of perjury or witness tampering. Dkt. 65, at 28. This argument should be rejected. It is offensive to every constitutional and professional norm governing the practice of criminal law. The fact that the Government makes it underscores the reasons why particularized notice is such an important constitutional right.

The Government’s Indictment charges that the leadership of an entire religion has been a criminal conspiracy for a hundred years; it charges that the doctrines of that religion are part of that criminal conspiracy, designed to facilitate a decades-long “trafficking” ring exploiting women for “commercial sex acts.” Yet the Government refuses to specify what acts it claims were crimes—who did what to whom, when, where, and how. It refuses to say what acts it claims constituted “trafficking,” or “commercial sex acts.” And it refuses to say what this case has to do with New York.

A little historical perspective is in order. We fought a Revolution in no small part because of the Crown’s proclivity for holding secret trials, in distant locations, with secret

evidence and no due process. *See*, *e.g*., Declaration of Independence (listing among King George's offenses "transporting us beyond Seas to be tried for pretended offences"). Prosecutors are ethically and constitutionally obligated to tell the defense what acts they are charging as crimes. A prosecutor should not lightly assert that he should be excused from telling the defendant what exactly he's accused of. The claim of the "danger of perjury" is outlandish. There is already a Protective Order in this case, through which the Government already has the power to restrict dissemination of discovery materials. In sum: No criminal defendant should ever be denied the right to know what's he's accused of, and the Government has no persuasive arguments as to why Mr. Garica should be so denied.

Last, the Opposition fails to rebut the defense's argument that a 3-million page document production is not a substitute for a bill of particulars. *See* Dkt. 65, at 26–27. The Government claims that the Indictment, correspondence with counsel, and the "Government's undertaking to provide additional information and notice well in advance of trial," are enough to "more than adequately inform the defendants of the charges against them." Doc. 65, at p. 28. This argument lacks merit. Neither the defendant nor his lawyers know what acts the Government claims were crimes, when they were done, by whom, or where. The defense cannot be required to guess where in a million-page haystack (if anywhere) the specific allegations are buried. *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam). Such burden-shifting is impermissible. *Id.* The Court should direct the Government to serve a bill of particulars.

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion, the Motion should be granted.

Dated: July 23, 2026

Respectfully submitted,

WERKSMAN JACKSON & QUINN LLP

By: /s *Caleb Mason*
Caleb Mason
Alan Jackson
Evan Wolk

*Attorneys for Defendant*
*Naason Joaquin García*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I declare under the penalty of perjury pursuant to 28 US C. § 1746 that this Motion contains 8,498 words.

Dated: September 11, 2026

Respectfully submitted,
WERKSMAN JACKSON & QUINN LLP

By: /s *Caleb Mason*
Caleb Mason
Alan Jackson
Evan Wolk

*Attorneys for Defendant*
*Naason Joaquin García*